# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

FILED

2006 MAY 31  PM 4: 42

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
          DEPUTY

| | | |
|---|---|---|
| **3M INNOVATIVE PROPERTIES COMPANY and POUYET, S.A.,** | § § § | |
| **Plaintiffs,** | § § § | |
| v. | § § | **CIVIL ACTION NO. A-06-CA-341-SS** |
| **WESTERN PACIFIC TELECOMMUNICATIONS, and VENTEC ENTERPRISES, INC.** | § § § § § | |

## MOTION AND BRIEF IN SUPPORT OF 3M IPC'S MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO SHOW CAUSE

Alan D Albright
ada@fr.com
Texas Bar No. 00973650
FISH & RICHARDSON P.C.
One Congress Plaza
111 Congress Ave, Suite 810
Austin, TX 78701
(512) 452-5070 (Telephone)
(512) 320-8935 (Facsimile)

Thomas M. Melsheimer
txm@fr.com
Texas Bar No. 13922550
Neil J. McNabnay
njm@fr.com
Texas Bar No. 24002583
Decker M. Cammack
dmc@fr.com
Texas Bar No. 24036311
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX  75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

Counsel for
3M INNOVATIVE PROPERTIES COMPANY
and POUYET, S.A.

## TABLE OF CONTENTS

I.    Introduction ...............................................................................................1

Ii.    Factual Background ...................................................................................1

Iii.    WPT Must Show Cause Why It Should Not Be Adjudged In Civil
Contempt Of The Consent Judgment ........................................................5

        A.    Disposition In A Contempt Proceeding Is Appropriate........................5

        B.    An Order Enjoining The Sale Of Wingspan Cable Closures
Was, And Remains, In Effect. .......................................................6

        C.    WPT Is Bound By The Terms Of The Consent Judgment. ...................6

        D.    Defendants Have Failed To Comply With The Consent
Judgment.......................................................................................8

Iv.    3M Is Entitled To A Preliminary Injunction Barring Manufacture,
Sales, Offering For Sale, Use, Or Importation Of Any Wingspan
Products Manufactured In The United States...............................................10

        A.    3M Is Likely To Succeed On The Merits. .........................................10

                1.    3M Will Succeed On The Merits Under The Doctrine Of
*Res Judicata*.............................................................................11

                2.    3M Will Succeed On The Merits Because Its Patents
Are Valid And Infringed By WPT's Devices..........................12

        B.    WPT's Continued Exploitation Of 3M's Patents Is Causing 3M
Irreparable Harm............................................................................13

        C.    The Balance Of Hardships To The Parties Tips In 3M's Favor..........15

        D.    The Public Interest Favors Issuance Of A Preliminary
Injunction Against WPT..................................................................17

V.    Conclusion................................................................................................18

## TABLE OF AUTHORITIES

Cases

Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc., 154 F.3d 1345,
        1351 (Fed. Cir. 1998) ...................................................................................................7

Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc., 989 F.
        Supp. 1237, 1243 (N.D. Cal. 1997)...........................................................................13

American Airlines, Inc. v. Allied Pilots Ass'n, 228 F.3d 574, 583 (5th Cir.
        2000)..............................................................................................................................5

Consent Judgment. See Windsurfing Int'l v. AMF, Inc., 782 F.2d 995, 1003
        (Fed. Cir. 1986) .....................................................................................................16, 18

Eagle Comtronics, Inc. v. Arrow Communication Labs., Inc., 305 F.3d 1303,
        1313 (Fed. Cir. 2002) ..................................................................................................5

Foster v. Hallco Mfg. Co., Inc., 947 F.2d 469, 476 (Fed. Cir. 1991) ......................................11, 12

Golden State Bottling v. NLRB, 414 U.S. 168, 179, 94 S.Ct. 414 (1973)......................................6

High Concrete Structures, Inc. v. New Enterprise Stone and Lime Co., Inc.,
        377 F.3d 1379, 1382 (Fed. Cir. 2004) ........................................................................12

Hybritech, Inc. v. Abbott Labs., 849 F.2d 1446, 1451 (Fed. Cir. 1988) ................................passim

Inc. v. MercExchange, L.L.C., __ U.S. __, 126 S.Ct. 1837, 1841 (2006)......................................15

John Mezzalingua Assocs., Inc. v. Arris Int'l, Inc., 298 F. Supp. 2d 813, 822
        (W. D. Wis. 2003) ......................................................................................................17

KSM Fastening Systems, Inc. v. H.A. Jones Co., Inc., 776 F.2d 1520, 1530
        (Fed. Cir. 1985) ..........................................................................................................5

Lyn-Lea Travel Corp. v. American Airlines, Inc., 283 F.3d 282, 291 (5th Cir.
        2002)..............................................................................................................................5

PPG Industries, Inc. v. Guardian Industries Corp., 75 F.3d 1558, 1567
        (Fed.Cir.1996) ...........................................................................................................16

Purdue Pharma L.P. v. Boehringer Ingelheim GMBH, 237 F.3d 1359, 1365
        (Fed. Cir. 2001) .........................................................................................................12

Smith Int'l, Inc. v. Hughes Tool Co., 718 F.2d 1573, 1581 (Fed. Cir. 1983)...............................17

Spindelfabrik Suessen-Schurr v. Schubert & Salzer, 903 F.2d 1568, 14
        USPQ2d 1913 (Fed.Cir.1990) ...................................................................................15

Telebrands Direct Response Corp. v. Ovation Communications, Inc., 802 F.
        Supp. 1169, 1179 (D.N.J. 1992)................................................................................16

Walling v. Rueter, 321 U.S. 671, 674, 64 S.Ct. 826 (1944) ...........................................................6

Rules

35 U.S.C. § 271 .........................................................................................................................14

35 U.S.C. § 283 .........................................................................................................................10

8

Federal Rule of Civil Procedure 65(d) .........................................................................................6

13

U.S. Patent No. 4,822 ..................................................................................................................1

U.S. Patent No. 4,857 ........................................................................................................1, 2, 3, 4

U.S. Patent No. U.S. Patent No. 4,810 ........................................................................................1

## I.    INTRODUCTION

Before the Court is Plaintiff 3M Innovative Properties Company's ("3M") Motion for Preliminary Injunction and Motion to Show Cause why the Court should not enter an Order finding Defendant Western Pacific Telecommunications ("WPT") in contempt for violating the Consent Judgment[1] entered by The Honorable Lucius Bunton in the United States District Court for the Western District of Texas, Austin Division.[2]

## II.    FACTUAL BACKGROUND

3M Company[3] manufactures cable enclosures for use in the telecommunications industry. On August 19, 1994, 3M sued Communications Technology Corporation ("CTC") for infringing several 3M patents, claiming that through CTC's manufacture and sales of certain aerial cable closures[4] marketed as CTC's "Wingspan" product line, infringed three U.S. Patents assigned to 3M. The three patents-in-suit in the case against CTC were U.S. Patent No. U.S. Patent No. 4,810,829 (the "'829 Patent"), U.S. Patent No. 4,822,954 (the "'954 Patent"), and U.S. Patent No. 4,857,672 (the "'672 Patent") (collectively, the "Consent Judgment Patents"). The

---

[1] The Motions set forth in this Motion and Brief are opposed. Decker Cammack, one of the undersigned attorneys for 3M IPC, conferred with Ryan Beard, Counsel of Record for WPT on May 31, 2006. Mr. Beard represented that WPT will oppose the Motions during that conference.

[2] The Consent Judgment in the matter of *Minnesota Mining and Manufacturing Company v. Communications Technology Corporation*, A-94-CA-566-JN (W.D. Tex), signed on October 14, 1996, is attached as Exhibit A, App. p. 1 (hereinafter the "Consent Judgment").

[3] Minnesota Mining and Manufacturing Company formally changed its name to 3M Company on April 8, 2002. For purposes of the Consent Judgment, both 3M Company and 3M IPC represent parties in privity with Minnesota Mining and Manufacturing Company, which was the original entity that entered into the Consent Judgment with WPT. Accordingly, 3M IPC is both bound by the Consent Judgment and as successor-in-interest to the patents-in-suit, is entitled to enforce the Consent Judgment. *See* Consent Judgment, p. 1, App. at 1; Settlement Agreement of Minnesota Mining and Manufacturing and CTC, October 7, 1996, attached as Exhibit "B", App. p. 8. Throughout this brief, "3M" shall be used to refer to 3M Company, 3M IPC, and Minnesota Mining and Manufacturing Company.

[4] "Aerial cable closures" are devices that permit splicing of cables, for example, when two separate lengths of cable are needed to span a given distance between telephone poles or other conventional junctions. Some aerial cable closures also permit a telephone "drop" to be run from the closure to a terminal point, such as a house or office building.

Defendant, CTC, agreed to a Consent Judgment on October 14, 1996 to end the patent infringement suit brought against it by 3M.

In the Consent Judgment, CTC admitted that claims 1, 2, 7, and 13 of the '829 Patent, claims 10-12 and 14-16 of the '954 Patent, and claims 24, 26, 27, and 29-31 of the '672 Patent were both valid and infringed by products then being manufactured and sold by CTC under the trademark "Wingspan."[5] Consent Judgment at 2, App. p. 2.  Under the terms of the Consent Judgment, CTC was permanently enjoined from infringing, whether directly, contributorily, or by inducement, any of the adjudicated claims of the Consent Judgment Patents.  Consent Judgment at 4, App. p. 4.

In addition to enjoining CTC from infringing the Consent Judgment Patents, the Consent Judgment explicitly enjoined CTC's "parents, subsidiaries and associated companies, and the officers, agents, servants, employees, attorneys, *successors*, and *assigns* of any of them, and all other persons or entities in active concert, participation or in privity with" CTC from infringing the Consent Judgment Patents.  *Id.* (emphasis added).  In 1997, CTC sold its "Wingspan" aerial closure business, including its existing inventory of infringing Wingspan cable closures, the molds used to make the Wingspan cable closures, and the associated trademarks, to WPT, the Defendant in this suit.  *See* Letter from Mark C. Doyle to Gerald Chernivec, April 12, 2002, at 1-2 (hereinafter "WPT Letter of April 12, 2002"), attached as Exhibit "C", App. p. 15.  3M learned of the sale of the Wingspan cable closures to WPT when it discovered in 2002 that WPT was offering Wingspan cable closures for sale in the Philippines, apparently marked "Made in USA."  *See* Letter from Mr. Gerald Chernivec to Western Pacific Telecommunications, March 7, 2002 (hereinafter "3M Letter of March 7, 2002"), attached as Exhibit "D", App. p. 17.

---

[5] As discussed *infra* at p. 3, shortly after entry of the Consent Judgment, CTC sold its entire "Wingspan" business to WPT, the Defendant in the current suit.  WPT purchased this business subject to the terms of the Consent Judgment.

3M immediately notified WPT of the existence of both its patent rights and the Consent Judgment with CTC and its obligations thereunder. *Id.* Mr. Terry Perez, WPT's Director of Administration, responded by informing 3M that WPT was not affiliated with CTC, representing that the Wingspan products were not manufactured in the United States of America, representing that the Wingspan products were not marked with the label "Made in USA", and informing 3M that WPT was aware of the countries in which 3M had patents corresponding to the Consent Judgment Patents. Letter from Mr. Terry Perez to Mr. Gerald Chernivec, March 12, 2002 (hereinafter "WPT Letter of March 12, 2002"), attached as Exhibit "E", App. p. 19.

Based on WPT's express representations, reaffirmed following subsequent correspondence with WPT's U.S. counsel,[6] 3M reasonably considered the matter resolved as to WPT's potentially infringing activities in the United States. *See* Letter from Mr. Gerald Chernivec to Mr. Mark C. Doyle, May 20, 2002, attached as Exhibit "G", App. p. 22. Critically, not only did WPT acknowledge the force and effect of the Consent Judgment, but it also reassured 3M of its own efforts to determine and respect the scope and presence of 3M's patent coverage relating to WPT's Wingspan products. It also expressly denied labeling any Wingspan products as "Made in the USA."

Despite these representations and assurances, 3M again discovered WPT's Wingspan products marked "Made in the USA" in Venezuela as recently as September 2005. *See* Declaration of Garry Sjolander, May 11, 2006, Attached as Exhibit "H", App. p. 23. These Wingspan cable closures were sold to CANTV, the Venezuelan national telecommunications company, through a bidding process by which, 3M has been informed, WPT was awarded the contract over other companies, including 3M Venezuela, who submitted bids for the supply

---

[6] *See* Letter from Mr. Chernivec to Mr. Doyle, April 17, 2002, attached as Exhibit "F", App. p. 20. This letter was in response to the WPT Letter of April 12, 2002.

rights of cable closures.[7]   Declaration of Miguel Abarca, May 26, 2006, at 9, (hereinafter

"Abarca Declaration") attached as Exhibit "L", App. p. 34, 35.   3M has also been reliably

informed that CANTV is, as of the date of this Motion and Brief, preparing for a second bidding

process that will award a contract for a significant number of additional cable closure products.

*Id.* ¶ 4, App. p. 34.  3M fully anticipates that WPT will participate in the bidding process invited

by CANTV in direct competition with 3M, and that WPT will compete with its infringing

Wingspan cable closures or in an infringing manner.

    3M is aware of additional infringing activity by WPT.  WPT has promoted and solicited

business for its infringing Wingspan products in the United States.  On November 16-17, 2005,

WPT attended the OSP Expo[8] at Fort Worth, Texas.   At the Expo, 3M obtained copies of a

product brochure that, upon information and belief, constituted an offer for sale of the WPT

products contained therein.  *See* WPT Product Brochure, attached as Exhibit "N", App. p. 38.[9]

In addition to the 2005 OSP Expo, WPT is currently scheduled to attend the 2006 OSP Expo in

Chicago, June 5-7.  There is also reason to believe that WPT will continue to offer its Wingspan

cable closures for sale in the U.S., in clear violation of the Consent Judgment.  *See*

http://www.ospmag.com/expo/exhibitor/list (showing WPT as exhibitor number 74018 at the

2006 OSP Expo), attached as Exhibit "P", App. p. 43, 44.

---

[7] 3M Manufacturera de Venezuela, S.A. ("3M Venezuela") was supplying aerial cable closures under contract as
late as February 21, 2005.  *See* Translation of CANTV Purchase Order 5100010229, December 22, 2004 (requesting
delivery of 3000 3M SLiC Terminal Cable Closures), attached, with Translation Certificate, as Exhibit "I", App. p.
26.  Subsequently, CANTV solicited 2 separate bids that, upon information and belief, were awarded to WPT and
filled with the infringing Wingspan cable closures, as discussed herein.  *See* Requests for Quote dated January 12,
2006 and May 2, 2006, attached as Exhibits "J" and "K", App. pp. 30, 32.
[8] The OSP Expo is a trade show sponsored by Outside Plant Solutions, and features products directed toward the
telecommunications industry.  *See* http://www.ospmag.com/expo, attached as Exhibit "M", App. p. 36.
[9] Although the brochure contains certain WPT Wingspan products as "For Export Only," the combination of the
brochures, WPT's Website displaying its Wingspan products, and the clear evidence that WPT marks its products
"Made in USA" results in the obvious conclusion – WPT was and is promoting its Wingspan products in the United
States.  *See* Closure Systems – Wingspan Aerial Closures, at www.wptele.com/closures/wing.htm (last viewed May
30, 2006), attached as Exhibit "O", App. p. 42.

III.   **WPT MUST SHOW CAUSE WHY IT SHOULD NOT BE ADJUDGED IN CIVIL CONTEMPT OF THE CONSENT JUDGMENT**

The appropriate law to apply in determining whether Defendants should be held in contempt is the law of the Fifth Circuit. *Eagle Comtronics, Inc. v. Arrow Communication Labs., Inc.*, 305 F.3d 1303, 1313 (Fed. Cir. 2002). To obtain a civil contempt order in the Fifth Circuit, 3M must establish, by clear and convincing evidence (1) that a court order was in effect; (2) that the order required certain conduct by Defendants; and (3) that Defendants failed to comply with the court's order. *See Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282, 291 (5th Cir. 2002). Because contempt proceedings are, by their very nature, designed to be "summary in form and swift in execution," 3M brings this Motion to Show Cause in order to provide Defendants with "notice and the opportunity to be heard," as required by the Constitution. *American Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 583 (5th Cir. 2000).

A.   **Disposition in a Contempt Proceeding is Appropriate.**

In addition to the requirements set forth by the Fifth Circuit, in the context of patent infringement, the Court must first determine whether the devices brought before the Court exhibit more than a "colorable difference" from the previously adjudged devices or from the patent found to be infringed in an earlier action. *See KSM Fastening Systems, Inc. v. H.A. Jones Co., Inc.*, 776 F.2d 1520, 1530 (Fed. Cir. 1985). Defendant WPT has marketed and currently is marketing *identical* cable closures under the same name—Wingspan—as CTC's infringing Wingspan cable closures, and even admits to possession of the molds used by CTC to infringe the Consent Judgment Patents. *See* WPT Letter of April 12, 2002, App. p. 15. There can be no legitimate question that the products at issue here are copies of CTC's infringing products.

**B.      An Order Enjoining the Sale of Wingspan Cable Closures Was, and Remains, in Effect.**

The first requirement for a contempt order is also indisputable – the Consent Judgment enjoining the sales of Wingspan cable closures has been in effect since October 14, 1996. *See* Consent Judgment at 5, App. p. 5. The Consent Judgment represents a final adjudication of the infringement action brought by 3M against CTC. This Brief will therefore focus on the remaining two conclusions: the Defendants are bound by the Consent Judgment; and the Defendants have failed to comply with the Consent Judgment.

**C.      WPT is Bound by the Terms of the Consent Judgment.**

Federal Rule of Civil Procedure 65(d) governs the effect and scope of permanent injunctions. *See* Fed. R. Civ. P. 65(d).[10] Although Rule 65(d) historically is derived from the common law principles that persons or entities not specifically named in a legal proceeding may not be bound by an injunction issued from that proceeding, courts have historically rejected a narrow reading of the rule that would limit the bound parties to the specific entities recited by Rule 65(d). A court's injunction order is binding not only on the named parties, but also parties in privity with the named party, parties subject to the control of the named party, and parties identified in interest with the named party. *See Golden State Bottling v. NLRB*, 414 U.S. 168, 179, 94 S.Ct. 414 (1973).[11] A person or company, like WPT, who acquires a business with full knowledge and appreciation of a prior injunction must comply with it. *Id.*

---

[10] "Every order granting an injunction…is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Fed. R. Civ. P. 65(d).

[11] It is clear that an injunction follows the business interests at issue in the injunction, and not merely the named party in the prior proceeding. An injunction, once entered by a district court according to established statutory requirements and judicial rules, "may…be enforced against those to whom the business may have been transferred, whether as a means of evading the judgment or for other reasons." *Walling v. Rueter*, 321 U.S. 671, 674, 64 S.Ct. 826 (1944) (emphasis added). Therefore, although WPT was not a named party in the prior proceeding, its manufacture and sale of infringing Wingspan cable closures as a successor-in-interest to the subject matter specifically named in the Consent Judgment certainly means that it is bound by the consent judgment.

Although a court may not generally find a party in contempt that has never appeared before the court, "[n]on-parties may be held in contempt...if they either abet the defendant, or are legally identified with him." *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 154 F.3d 1345, 1351 (Fed. Cir. 1998). The facts in *Additive Controls* are directly applicable to the instant case. In *Additive Controls*, the former president of Additive Controls ("AdCon")—a Mr. Cotton—redesigned a flowmeter after AdCon's flowmeter had been found to infringe a patent owned by Flowdata. *Id.* at 1348. Upon motion and after a show-cause hearing before the district court, the court found Cotton, as well as the new company Cotton formed to market the redesigned flowmeters, TruFlo, in contempt of the injunction issued in the patent infringement trial. *Id.* at 1349 (the district court found that the redesigned flowmeters were nothing more than colorable variation of the infringing AdCon meter, and ordered TruFlo and Cotton to show cause why they should not be held in contempt).

On appeal, the Federal Circuit held that "[n]on-parties are subject to contempt sanctions if they act with an enjoined party to bring about a result forbidden by the injunction," as long as "they are aware of the injunction and know that their acts violate the injunction." WPT repeatedly admitted its knowledge of the injunction in its correspondence with 3M, and has tacitly acknowledged that the injunction applied to WPT as the seller. WPT did not respond that it was not bound by the terms of the Consent Judgment; rather it took steps to assure 3M that WPT was not violating the injunction obtained by 3M by manufacturing goods within the United States, *and* that WPT had made some attempt to respect 3M's patent rights related to the Wingspan products. *See* WPT Letter of March 12, 2002, App. p. 19. Additionally, and in this case, unlike in *Additive Controls*, the products at issue are not merely colorable variations that might raise an issue of whether it is proper to find contempt—they are the *identical products*

found by this Court's predecessor to infringe the Consent Judgment Patents, made with the very same infringing molds.

The Consent Judgment enjoins the manufacture, use or sale of the Wingspan cable closures and associated endcaps and any associated products, tooling, or molds that infringe the Consent Judgment Patents. *See* Consent Judgment, at 4-5, App. pp. 4 – 5. WPT admitted it purchased the Wingspan business from CTC, including CTC's toolings used to make the Wingspan cable closures, CTC's existing inventory of Wingspan products, and all of CTC's intellectual property assets pertaining to the Wingspan cable closures. Defendants cannot dispute that they are successors in interest to CTC with respect to the Wingspan aerial closure business, and are therefore bound by the Consent Judgment entered against the Wingspan products.

**D.    Defendants have Failed to Comply with the Consent Judgment**

Defendants knowingly defy the Consent Judgment despite actual knowledge of the injunction prohibiting manufacture and sale of Wingspan products in the United States. *See* Sjolander Declaration, at ¶¶ 5 – 6, App. p. 24. WPT's correspondence directly with 3M clearly evidence not only their actual knowledge of the Consent Judgment, but also a practice of evading 3M's reasonable attempts to prevent further infringement of its patent rights through direct discussions. Now, over three years since WPT's representations and assurances to 3M, 3M has discovered additional Wingspan products that – directly contrary to WPT's representations – are labeled as made in the United States. *See* Exhibit 1 of the Sjolander Declaration, App. p. 25.

WPT also actively solicits business for its Wingspan products in the United States though advertising and attendance at trade shows. Although some of the products in its brochures are marked "for export only," the label "made in the United States" belies that intent. WPT is either

manufacturing or offering its Wingspan products for sale in the United States, or both, in clear violation of the Consent Judgment.[12]

Defendants' actions are precisely the type of activities that warrant a contempt order. With full knowledge of a Consent Judgment – one that clearly specifies the enjoined activities – WPT continues to offer for sale and to sell infringing products that they themselves represent to have been manufactured in the United States. In order for this Court to properly assess the parties' respective rights, the Court should order WPT to show cause why it should not be held in contempt, including the production of documents that reveal the amount of manufacture and sale that has taken place, so that the 3M—and the Court—can accurately assess the extent of WPT's infringement of the Consent Judgment Patents. WPT should be ordered to produce documents showing the location of manufacture, the quantities of Wingspan cable closures manufactured and sold, and any shipping documents reflecting the shipping routes, dates, and quantities shipped anywhere in the world.

In addition to shipping documents, upon WPT's failure to show cause, WPT should be required, as part of any contempt order, to turn over the infringing molds and associated tooling equipment for Wingspan cable closures to 3M to prevent WPT's continued defiance of the Consent Judgment entered by this Court.

---

[12] Counsel for WPT has informed the undersigned counsel for 3M IPC that, based on express representation by WPT, WPT manufactures its products in Mexico, and does not manufacture products in the United States. Though 3M does not question the veracity of WPT's *counsel*, WPT has made representations regarding its Wingspan business to 3M in the past that have turned out to be false. *See* Section II, *supra* (detailing WPT's assurances that it would not infringe 3M's valid patents in the United States). While 3M's investigation into WPT's foreign activities is ongoing, the abundance of evidence of infringement of the Consent Judgment Patents in the United States leaves 3M with no choice than to seek relief from the Court to prevent further infringement and to enforce the Consent Judgment.

IV.    **3M IS ENTITLED TO A PRELIMINARY INJUNCTION BARRING MANUFACTURE, SALES, OFFERING FOR SALE, USE, OR IMPORTATION OF ANY WINGSPAN PRODUCTS MANUFACTURED IN THE UNITED STATES**

The patent statute specifically authorizes courts to issue preliminary injunctions. *See* 35 U.S.C. § 283.  In deciding whether to grant a preliminary injunction, the Court must analyze whether 3M can demonstrate the following four factors: (1) reasonable likelihood of success on the merits; (2) irreparable harm; (3) the balance of hardships tipping in its favor; and (4) the impact of the injunction on the public interest. *Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 (Fed. Cir. 1988).  3M's motion for preliminary injunction should be granted because it can easily demonstrate each of the four factors.  Precisely the same products sold by WPT have already been found to infringe valid patents owned by 3M, so the Court should immediately issue a preliminary injunction against WPT, which in effect would provide 3M the continued protection of the permanent injunction that is already in force.

A.    **3M Is Likely To Succeed On The Merits.**

This Court has already entered a *permanent* injunction to preserve 3M's right to exclude infringing competitors from the marketplace.  This injunction should be enforced against WPT. Despite WPT's statements to 3M that it is not manufacturing Wingspan products in the United States, the most recent evidence points to a different conclusion.  *See* Sjolander Declaration, Exhibit 1, App. p. 25 (showing packaging of Wingspan cable closure clearly marked "Made in USA.").

There can be no dispute that if WPT is, in fact, manufacturing, selling, offering for sale, or importing Wingspan cable closures in the United States, 3M will succeed on the merits of this case.  The issues of patent infringement and validity for both the patents and devices at issue have already been decided in 3M's favor and are binding on these parties under the doctrine of

*res judicata.*  Further, even outside of the preclusive effects of the previous judgment regarding these very patents, the accused devices clearly infringe the valid patents-in-suit, and the Defendants cannot proffer any meritorious arguments challenging the validity of these patents.

### 1.   3M Will Succeed On The Merits Under The Doctrine of *Res Judicata.*

The doctrine of *res judicata* embodies the public policy of putting an end to litigation. The aspect of *res judicata* that "precludes re-litigation of a claim, or cause of action...applies whether the judgment of the court is rendered after trial and imposed by the court or the judgment is entered upon by the consent of the parties." *Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 476 (Fed. Cir. 1991).[13]

Both the language of the Consent Judgment and the identity between the Wingspan products covered by the Consent Judgment and the Wingspan cable closures manufactured and sold by WPT dictate that 3M will prevail on the merits of this case under principles of *res judicata.*   The Consent Judgment ending the previous litigation between 3M and WPT's predecessor in interest to the Wingspan business specifically states that all the claims of the Consent Judgment Patents are *valid and enforceable in any* cause of action, and that all parties to the action are entitled to, and specifically intend issue preclusion, claim preclusion, collateral estoppel, and *res judicata* to apply to any future litigation or patent office proceeding related to the Consent Judgment Patents.   Consent Judgment at 3-4, ¶¶ 3, 6, App. p. 3-4 (emphasis added).

Indeed, based on information from WPT itself, WPT's Wingspan cable closures are cast from the *same mold as the infringing devices* in the prior litigation.  *See* WPT Letter of April 12, 2002.  WPT stepped into the shoes of the same company against whom this Court entered

---

[13] In *Foster*, the Federal Circuit held that a consent decree respecting patent validity could be given *res judicata* effect to bar future litigation of that claim by the parties, so long as the prior suit between the parties was on the same cause of action. *Foster*, 947 F.2d at 480.  If the "structure of the device or devices at issue" in the prior and the instant litigation are "essentially the same," then *res judicata* affords the consent judgment from the prior litigation a

judgment for infringement in the prior litigation, by virtue of WPT's position as a successor-in-interest to the Wingspan cable closure manufacture and sales business purchased from CTC. *See* Section III.C., *supra*. The plain language of the Consent Judgment, the identity of the devices at issue, and the close privity of the defendants in each case indicate that 3M would prevail on the merits of the case based on *res judicata* from the previous judgment.

### 2. 3M Will Succeed On The Merits Because Its Patents Are Valid And Infringed By WPT's Devices.

Even if 3M were not able to prevail based solely on the preclusive effects of *res judicata* in this case, it will prevail on the merits because it has a valid patent that WPT's devices clearly infringe. To succeed on validity, 3M must only show a reasonable likelihood that WPT will fail at trial to meet its burden of proving, by clear and convincing evidence, that the asserted patent is invalid. *High Concrete Structures, Inc. v. New Enterprise Stone and Lime Co., Inc.*, 377 F.3d 1379, 1382 (Fed. Cir. 2004). Every duly issued patent is presumed valid. *Id.* Therefore, if WPT fails to identify any persuasive evidence of invalidity, the mere existence of the patent satisfies 3M's burden on validity. *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1365 (Fed. Cir. 2001). These facts alone are enough for 3M to demonstrate a reasonable likelihood that WPT will not be able to present clear and convincing evidence that the patents are invalid.

3M must also show a reasonable likelihood of success on the merits regarding infringement. Though proof of infringement typically involves construction of the claims and comparison of the construed claims against the accused devices, *see, e.g., Purdue Pharma*, 237 F.3d at 1363, WPT has essentially conceded that any Wingspan products made, used, or sold in the United States infringe the Consent Judgment Patents. *See* WPT Letter of April 12, 2002,

---

preclusive effect in the instant litigation. *Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.*, 989

App. pp. 15 - 16 (maintaining that WPT intends to comply with all patent laws, and requesting a list of countries in which 3M has patent protection for aerial closures covered by the Consent Judgment Patents so that WPT "can be assured that there will be no infringement of 3M's patent rights.").

The infringing products were most likely cast from the very same molds as the infringing products from 3M's previous litigation with WPT's predecessor, which products were found by this Court to infringe these very same patents. There is virtually no doubt that 3M, given these unique facts, can and will prevail on the issue of infringement.

### B. WPT's Continued Exploitation Of 3M's Patents Is Causing 3M Irreparable Harm.

The second factor in determining whether a preliminary injunction should issue is the extent of irreparable harm that 3M will suffer, if a preliminary injunction is not granted. *See, e.g., Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1456 (Fed. Cir. 1988). 3M can show irreparable harm. First, 3M is currently involved in the bidding process for future contracts with CANTV for its patented "SLiC" terminal cable closures. *See* Request for Quote from CANTV to 3M Venezuela, May 2, 2006, App. p. 32.[14] 3M will be competing with WPT in a bid process for the sale of up to approximately 16,000 units to CANTV in Venezuela **on or about May of 2006.** Abarca Declaration, ¶ 4, App. p. 34. It is expected that the award of the bid will take place no later than June of 2006, and the sale and delivery of the units will be required within about sixty days thereafter, making a resolution of this motion urgent. *Id.* ¶¶ 5-7. 3M asserts that should Defendant WPT win the award, it should not be permitted to manufacture the Wingspan closures

---

F. Supp. 1237, 1243 (N.D. Cal. 1997).

[14] Even without the potential for the imminent loss business, 3M is entitled to a "rebuttable presumption that it would be irreparably harmed if a preliminary injunction were not to issue." *Bell & Howell*, 132 F.3d at 705 (vacating the district court's denial of preliminary injunction) (citing *Polymer Techs., Inc. v. Bridwell, H.A.*, 103 F.3d 970, 973 (Fed. Cir. 1996)).

in the US, and, if WPT manufactures the closures outside of the United States, it should not be permitted to import them into the United States for the sale and delivery to CANTV. This conduct clearly infringes the letter of the law.[15]

If WPT is allowed to continue its infringement, 3M will imminently suffer further harm, including a further loss of market share and further damage of 3M's reputation through the loss of additional sales. Since WPT began offering its products in Venezuela, 3M has lost over $2,500,000 in sales. Abarca Declaration, ¶ 9, App. p. 35. Upon information and belief, this monetary loss is attributable to WPT's infringement. *Id.* Moreover, without the Court's intervention in this matter by enjoining WPT, the harm to 3M will continue.

Where a plaintiff clearly establishes the first factor (by making a clear showing of both validity and infringement), it is "entitled to a rebuttable presumption that it would be irreparably harmed if a preliminary injunction were not to issue." *Bell & Howell*, 132 F.3d at 705 (vacating lower court's denial of preliminary injunction) (citing *Polymer Techs., Inc. v. Bridwell, H.A.*, 103 F.3d 970, 973 (Fed. Cir. 1996)).[16] This presumption comes in part from the finite life of a patent, because the passage of time can cause irreparable harm simply by reducing that effective life. *See, e.g., H.H. Robertson*, 820 F.2d at 390. The principal value of the patents is 3M's statutory right to exclude others, as it desires to do here.

In addition, although the infringing conduct of manufacture is apparently taking place in the United States, the sale of the infringing products is being made on a global basis. This raises serious issues of the ability of 3M to collect damages at the end of any trial in this case, and underscores the need for the Court to enjoin WPT's infringement. *C.f. Spindelfabrik Suessen-*

---

[15] 35 U.S.C. § 271.

[16] 3M does not argue that the Court should disregard the four-factor test for determining whether an injunction should issue. As the Supreme Court recently noted, "the decision whether to grant or deny injunctive relief rests

*Schurr v. Schubert & Salzer*, 903 F.2d 1568, 14 USPQ2d 1913 (Fed.Cir.1990).[17] *Spindelfabrik* represents the converse of WPT's infringing activities, and by enjoining WPT's infringement, the Court can put an end to WPT's contemptuous and deleterious conduct. WPT should not be allowed to sell infringing Wingspan products that are manufactured or imported into the U.S. for shipment abroad and then force 3M into a global game of "catch-me-if-you-can" with respect to the fruits of those sales.

3M has invested a substantial amount of resources over the years in producing and marketing the patented technology—at least in part on reliance that it had a Consent Judgment in place against WPT since it was the successor in interest to CTC. WPT's continued ability to manufacture and sell its infringing products undermines and alters the global market for legitimate 3M products protected by the patents. Monetary compensation cannot compensate for these adverse effects on the market. In light of the Consent Judgment, 3M is entitled to a preliminary injunction against WPT.

### C.     The Balance Of Hardships To The Parties Tips In 3M's Favor.

The third factor to be considered in determining whether to grant 3M's motion is the balance of the hardships on the respective parties. *See, e.g., Hybritech*, 849 F.2d at 1457. In balancing the hardships, the magnitude of the threatened injury to the patent owner is weighed, in light of the strength of the showing of likelihood of success on the merits, against the injury to the accused infringer. *See, e.g., H.H. Robertson*, 820 F.2d at 390. To do this, the Court must

---

within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity." *eBay, Inc. v. MercExchange, L.L.C.*, __ U.S. __, 126 S.Ct. 1837, 1841 (2006).
[17] In *Spindelfabrik*, the enjoined party argued that the Federal Circuit should lift the injunction because by enjoining the German manufacture of goods both destined for sale in the United States and protected by U.S. Patent Law, the district court "impermissibly extend[ed] the reach of American patent law beyond the boundaries of the United States." *Id.* In spite of Spindelfabrik's arguments, the Federal Circuit upheld the injunction as "well within the district court's authority," and "a reasonable and permissible endeavor to prevent infringement in the United States and not a prohibited extra-territorial application of American patent law. *Id.* at 1578, 903 F.2d 1568, 14 USPQ2d at 1921 (emphasis added).

balance the inevitable harm to the patent holder with the defendant's continued ability to exploit its infringing products. *See, e.g., PPG Industries, Inc. v. Guardian Industries Corp.*, 75 F.3d 1558, 1567 (Fed.Cir.1996).

WPT assumed the risk of being enjoined when it chose to enter this market with the knowledge that 3M had patented the technology at issue in this case and that its predecessor in interest had entered into a Consent Judgment restricting it from the sale or manufacture of infringing products. *See, e.g., Telebrands Direct Response Corp. v. Ovation Communications, Inc.*, 802 F. Supp. 1169, 1179 (D.N.J. 1992). In this case, WPT's illegal and contemptuous manufacture and sale of its infringing products is depriving 3M of the advantages of its patent rights—especially the exclusive right to manufacture and exclude products in the United States that are covered by the Consent Judgment Patents—because it will be competing with unlawful infringers. WPT will thus be able to continue to exploit its infringing products and obtain business that might have gone to 3M. The Federal Circuit has a strong policy disapproving of the unauthorized practice of patented inventions by adjudged infringers, which necessarily applies to WPT is in this case, given the previous Consent Judgment. *See Windsurfing Int'l v. AMF, Inc.*, 782 F.2d 995, 1003 (Fed. Cir. 1986) (permanent injunction context).

The Defendant cannot in good faith contend that it will suffer any undue hardship from the entry of an injunction by this Court. If it is not violating the Consent Judgment, that is, if it is not manufacturing, using, selling, offering for sale, or importing infringing products in the United States, then the injunction will not restrict it in any manner or alter any of its business plans. If WPT is infringing Wingspan products in the United States despite being subject to the prohibition of the Consent Judgment, then it has no meritorious argument under equity to argue against the entry of the injunction. A preliminary injunction enforcing the terms of the Consent

Judgment would simply be maintaining the status quo that the parties bound to (and the Court imposed) when the Court entered the Consent Judgment.

Here, where the balance of the hardships clearly tips in 3M's favor, 3M is entitled to a preliminary injunction against WPT.

**D.      The Public Interest Favors Issuance Of A Preliminary Injunction Against WPT.**

The final consideration of whether to grant a preliminary injunction—the public interest—supports granting a preliminary injunction against WPT, because "public policy favors protection of the rights secured by valid patents." *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983). Only a critical countervailing public interest should prevent a court from entering a preliminary injunction preventing the infringement of valid patent rights. *See, e.g., Hybritech*, 849 F.2d at 1458 (Fed. Cir. 1988).

There is no question that 3M has the capacity to supply any additional demand created by WPT's infringing products, so removing WPT's infringing products from the market will not harm the public in any way. *See, e.g., John Mezzalingua Assocs., Inc. v. Arris Int'l, Inc.*, 298 F. Supp. 2d 813, 822 (W. D. Wis. 2003). The Court should therefore exercise its clear authority to prevent WPT's disregard of the Consent Judgment.

3M has made a substantial investment in innovation and in enforcing its rights to its innovation against WPT's predecessor through judgment. If WPT has manufactured infringing products in the United States as it has labeled them, if it has offered the infringing products for sale at trade shows in the United States, or if WPT is importing the infringing products into the United States for the purpose of the sale or delivery to customers, then it has willfully infringed the Consent Judgment Patents, and it has done so despite a Consent Judgment entered by this Court prohibiting the sale or manufacture of the infringing products. Finally, it is difficult to

imagine any public interest that would be preserved by permitting a company to acquire a business that is subject to a Consent Judgment and permit the purchaser to ignore the restrictions imposed by that Judgment.  In other words, it is difficult to articulate any public interest that would be served by permitting WPT to manufacture, sell, offer for sale, import, or use the cable closures in the United States.

## V.    CONCLUSION

In the context of a permanent injunction, the Federal Circuit has held that "[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Windsurfing Int'l v. AMF, Inc.*, 782 F.2d 995, 1003 (Fed. Cir. 1986).  Though 3M is not asking for a permanent injunction against WPT (yet) as in *Windsurfing*, given the underlying Consent Judgment, this quote is applicable in the present case.  The Court should enjoin any acts of infringement by WPT.  In addition, WPT must show cause why it should not be subject to the contempt of this Court and establish that it is not manufacturing, selling, offering for sale, or importing Wingspan cable closures in the United States.

WPT should be enjoined from all activities that infringe the Consent Judgment Patents in the United States.  All of the relevant factors for an injunction weigh against WPT because (1) 3M has an extremely strong likelihood of success on the merits under the doctrine of *res judicata* and because of its extraordinarily strong infringement contentions; (2) 3M will suffer irreparable harm if WPT is not enjoined because of its high chances of success on the merits, among other things; (3) the balance of hardships tips in favor of 3M given the continuing illegal exploitation by WPT of 3M's patented technology; and (4) the public interest supports issuance of a preliminary injunction to support patent rights, and no compelling countervailing interest undermines the public's interest in a reliable patent system.

At a minimum, 3M moves the Court to Order WPT to show cause why it should not be held in contempt of the Consent Judgment.  As part of WPT's burden to show cause, 3M prays the Court order WPT to expeditiously produce the following categories of documents:

a)    All Documents showing the location of manufacture of all Wingspan Cable Closures under the direction, control, or at the request of, WPT;

b)    All Documents showing the costs of manufacture of Wingspan Cable Closures under the direction, control, or at the request of, WPT;

c)    All documents that show the profits earned by WPT by or through sales of Wingspan Cable Closures under the direction, control, or at the request of, WPT, to any party worldwide;

d)    All documents evidencing, showing, or otherwise referencing contracts for the purchase of Wingspan Cable Closures from WPT by any party, worldwide; and

e)    All documents referring in any way to the labeling of Wingspan products, including, but not limited to, the labeling of Wingspan products with the designation "Made in USA";

f)    All documents provided by WPT to prospective customers at trade shows, including brochures, price lists, and contracts for the sale of Wingspan products, including documentation sufficient to show the trade shows at which such documents were offered; and

g)    All documents showing the shipping practices for Wingspan products, including whether WPT (or others acting under its direction or control or in concert with it) imports Wingspan products into the U.S., whether for sale or subsequent shipment outside the United States.

In addition to the Court's Order to Show Cause, 3M prays the court enter a preliminary injunction barring WPT from any further manufacture, sale, offer for sale, or importation in the United States, and further bar WPT from exporting of any Wingspan Cable Closure or Wingspan Terminal Closure from the United States until the present case is resolved by Final Judgment

entered by this Court.  To expedite the resolution of this matter, 3M requests a hearing on the

issues raised by this Motion and Brief at the Court's earliest convenience.

Dated:  May 31, 2006                         Respectfully submitted,

                                             By:  _____
                                                  Alan D Albright
                                                  ada@fr.com
                                                  Texas Bar No. 00973650
                                                  FISH & RICHARDSON P.C.
                                                  One Congress Plaza
                                                  111 Congress Ave, Suite 810
                                                  Austin, TX 78701
                                                  (512) 452-5070 (Telephone)
                                                  (512) 320-8935 (Facsimile)

                                                  Thomas M. Melsheimer
                                                  txm@fr.com
                                                  Texas Bar No. 13922550
                                                  Neil J. McNabnay
                                                  njm@fr.com
                                                  Texas Bar No. 24002583
                                                  Decker M. Cammack
                                                  dmc@fr.com
                                                  Texas Bar No. 24036311
                                                  FISH & RICHARDSON P.C.
                                                  1717 Main Street, Suite 5000
                                                  Dallas, TX  75201
                                                  (214) 747-5070 (Telephone)
                                                  (214) 747-2091 (Facsimile)

                                                  Counsel for
                                                  3M INNOVATIVE PROPERTIES COMPANY
                                                  and POUYET, S.A.

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that he conferred with Ryan Beard, counsel for Defendants on
May 31, 2006. Defendants are opposed to the Motion.

_____
          Alan D Albright

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on May 31, 2006 to counsel of record listed below via HAND DELIVERY and EMAIL per Local Rule CV-5.

Dwayne K. Goetzel
Eric B. Myertons
Ryan T. Beard
Meyertons, Hood, Kivlin,
 Kowert & Goetzel, P.C.
700 Lavaca, Suite 800
Austin, Texas 78701
(512) 853-8800 (telephone)
(512) 853-8801 (facsimile)

ATTORNEYS FOR DEFENDANTS

_____
Alan D Albright

Mtn for PI FINAL.doc